**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | | |
|---|---|---|
| DONNA L. CRONIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:11-471-MBS -JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff, Donna L. Cronin ("Cronin"), originally filed this action in the Court of Common Pleas for Richland County. Her former employer, the South Carolina Department of Corrections ("SCDC"), the Defendant herein, removed the case to this Court on February 28, 2011. SCDC filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., on March 7, 2011. Cronin filed a response in opposition to the motion on April 7, 2011. This case was automatically referred to the undersigned for pretrial purposes pursuant to 28 U.S.C. § 636 and Local Civil Rule 73.02(B)(2)(g) DSC.

The Complaint contains a number of factual allegations and states five separate causes of action: (1) "wrongful discharge/breach of contract"; (2) "negligent supervision"; (3) "gender discrimination" in violation of Title VII; (4) "retaliation" in violation of Title VII; and (5) a violation of rights under the equal protection clause under § 1983. SCDC alleges defects with respect to each claim.

**Standard Under Rule 12(b)(6)**

Rule 12(b)(6) governs dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (citation and quotation marks omitted). "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir.2009). The court will also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor ...." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999). But "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts ...." Nemet Chevrolet, 591 F.3d at 255. "[A] complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)) (quotation marks omitted). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Id. at 256 (quoting Iqbal, 129 S.Ct. at 1949). "[T]he complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.' " Id. (quoting Iqbal, 129 S.Ct. at 1952).

1. **Sufficiency of Jurisdictional Allegations**

The Complaint alleges that "Plaintiff has satisfied all agency, administrative and judicial prerequisites to the institution of this action." (Complaint, ¶ 6).  SCDC argues that Cronin's

jurisdictional allegation is insufficient because "there are no facts alleged upon which SCDC or the court can determine if in fact [the jurisdictional] assertion is true." (Def.Mem., p. 6). This argument is directed at Cronin's claims under Title VII.

The issue of jurisdiction is a question for this Court to determine. Lance v. Coffman, 549 U.S. 437, 439 (2007). The burden of alleging facts sufficient to establish subject matter jurisdiction is on the Plaintiff. Pinkley, Inc. v. City of Fredrick, Md., 191 F.3d 394, 399 (4th Cir. 1999). The parties agree that the receipt of a right to sue letter from the appropriate agency is a jurisdictional prerequisite to the filing of a Title VII action in this Court. "[W]here '[n]either the complaint, nor the amended complaint alleges' that the plaintiff has 'complied with these prerequisites' the plaintiff has not 'properly invoked the court's jurisdiction under Title VII.'" Davis v. North Carolina Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995), quoting United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979). The jurisdictional allegation in the present Complaint would appear to be sufficient under the Davis standard. In any event, Cronin has attached a copy of her right to sue letter to her opposition memorandum. The undersigned concludes that this submission cures any defect in the jurisdictional allegation. *See* Bland v. Fairfax County, Virginia, No. 1:10cv1030 (JCC/JFA) 2011 WL 2580343, *4 (E.D.Va. Jun. 29, 2011) ("a failure to properly plead jurisdiction in a complaint may later be cured where jurisdiction in fact exists and where concerns for waste of resources and judicial economy warrant.").

2. **Sufficiency of Allegations of Plaintiff's Claims**

SCDC argues that Cronin's factual allegations contained in her Complaint are insufficient to support any of her claims under the standard discussed above. Cronin alleges the following facts:

1. Plaintiff was employed with Defendant from September 2003 until March 16, 2010, most recently as an Administrative Assistant. Her performance reviews were good throughout her employment with SCDC.

2. In or about 2006, Plaintiff began to work with the newly formed Special Investigations Unit (hereinafter referred to as "SIU"), a division within Defendant's Department of Investigations, which was created to work specifically with cases involving gangs, fugitives, and narcotics.

3. During Plaintiff's time with Defendant, the SIU was housed in a separate office with no internal connections to any other SCDC departments. Upon information and belief, six to seven SCDC employees were assigned to SIU, or worked within the SIU office, during Plaintiff's employment with the unit.

4. During all times relevant to this matter, Plaintiff was the only female who worked within SIU. The other employees within SIU were male investigators.

5. Upon information and belief, throughout Plaintiff's employment with SIU, a male SIU employee, Investigator Kim Dawsey (hereinafter referred to as "Dawsey"), demonstrated aggressive, threatening, demeaning, and intimidating behavior toward Plaintiff. Dawsey's behavior grew worse during Plaintiff's tenure with Defendant.

6. Dawsey would yell and display intense anger in front of Plaintiff and referred to her as a "Bitch."

7. In, or about May 2008, Plaintiff complained to SCDC management about male SIU employees using the female restroom. This complaint was addressed by Debbie Barnwell, a SCDC manager, who sent an email to the male SIU employees on May 14, 2008 instructing them not to use the ladies restroom. Later that same day, Plaintiff received a demeaning email message from a male SIU employee, Douglas "Rocky" Barrett. Copies of these email messages are attached hereto as Exhibit 1.

8. In, or about, May 2009, Dawsey's behavior toward Plaintiff became so severe that Plaintiff filed a complaint with Defendant's Employee Relations Branch in which she alleged that she was being subjected to a hostile work environment based on her gender. On, or about, June 22, 2009, a representative of Employee Relations Branch sent Plaintiff a letter stating that her complaint was without merit.

9. After Plaintiffs' May 2009 complaint, Dawsey's hostile and aggressive behavior toward her intensified.

10. In, or about, February 2010, Dawsey kicked-in the door to his SIU office, destroying the lock. Upon information and belief, Dawsey thereafter installed a hasp and personal lock to secure his office. Apparently, another SIU employee reported this

4

incident to SCDC management and a locksmith was sent to repair the door. Plaintiff never reported Dawsey's kicked-in door or installation of a hasp and personal lock to anyone working for Defendant.

11. On, or about, February 19, 2010, the locksmith came to the SIU office to repair Dawsey's door. After the locksmith arrived, Dawsey, standing outside Plaintiff's door made a statement to the effect that "Some employee doesn't like the way my door looks and they reported it. They should be more worried about themselves instead of my door. And by the way, isn't it against SCDC policy, or the fire code, to keep a chair in front of an office door?" Plaintiff, because of her fear of Dawsey, routinely kept a chair against her door, and did have this chair in front of her door at the time Dawsey made this statement.

12. By email message dated February 19, 2010, Debbie Barnwell, a supervisor at SCDC, directed Dawsey to remove the hasp and lock from his door. Dawsey replied with a strident, intimidating email message indicating that he would retaliate against the SIU employee who reported the hasp and lock installation to Ms. Barnwell. A copy of the email is attached hereto as Exhibit 2.

13. On, or about, February 22, 2010, Plaintiff was told about Dawsey's email and was given a copy to read. Plaintiff understood Dawsey's email to be a threat against her and became extremely worried and felt sick. Later that same day, Plaintiff met with Ms. Corrie Unthank, a representative of the Employee Relations Branch, and informed her; a) that she felt that Dawsey's email was a threat directed towards her, b) that she was afraid of Dawsey, and based on his past demonstrations of anger, she felt that he might harm her physically, c) that Dawsey kept a shotgun in his office, which was a violation of SCDC policy, and that his easy access to this firearm enhanced her fear for her own safety, d) that SCDC had ignored her May 2009 complaint against Dawsey, and e) that if this matter were not handled, she would be forced to resign her position with SCDC because she was too scared to work under these conditions.

14. After hearing her story, Ms. Unthank escorted Plaintiff to the office of Mr. Robert Peterson, upon information and belief, Defendant's Director of Human Resources. After reading Dawsey's email and listening to Plaintiff's story, Mr. Peterson advised Plaintiff to go home for her own safety.

15. Heeding Mr. Peterson's advice, Plaintiff returned to her office at SIU to collect some things before going home. While in the SIU office, Plaintiff spoke to Investigator Larry Estes, who informed Plaintiff that Dawsey, again in violation of SCDC policy, had placed his SCDC-issued handgun in the back of his pants as he performed work in the SIU office. Dawsey's action so unnerved Mr. Estes that he decided to wear his SCDC-issued firearm in the office.

16. Plaintiff, though terrified for her safety, returned to work on the morning of February 23, 2010. Dawsey arrived at the SIU office soon thereafter. During the time Dawsey was in the SIU office, Plaintiff was too afraid to leave her locked office, even to use the restroom, until after Dawsey had left.

17. Plaintiff was too afraid to go to work on February 24, 2010, so she stayed home. Plaintiff did speak with Ms. Corrie Unthank who informed her that Dawsey would likely be asked to take a leave of absence from SCDC, that he would be given a mental competency test, and that he would be moved out of the SIU. Plaintiff told Ms. Unthank about Dawsey wearing his handgun in the back of his pants at the SIU office on February 22, 2010.

18. Plaintiff worked on February 25th and 26th, 2010 because she knew that other SIU investigators would be in the office. Plaintiff spoke with Ms. Unthank on both days.

19. On, or about, the morning of March 2, 2010, Plaintiff was working in the SIU office when Ms. Corrie Unthank called and informed her that members of SCDC management would shortly be meeting with Dawsey to inform him that he needed to take medical leave in order to undergo a psychiatric evaluation. Members of SCDC management would then escort Dawsey to the SIU office in order to retrieve his personal property. Ms. Unthank informed Plaintiff that if she wanted to leave the office prior to Dawsey returning, she needed to do so promptly. Plaintiff immediately left work for the day.

20. On March 3, 2010, Plaintiff spoke with Ms. Debbie Barnwell, Director of Defendant's Division of Investigations. Ms. Barnwell informed Plaintiff that Dawsey was asked to take leave for a couple of weeks and that he had turned-in his keys to the SIU office. Plaintiff asked Ms. Barnwell if Dawsey would come back to work at SIU at the end of his leave period. Upon information and belief, Ms. Barnwell replied that "we will cross that bridge when we get to it."

21. On the morning of Monday, March 8, 2010, Plaintiff arrived to work and noticed that Dawsey's SCDC-issued car was not in the SIU lot, indicating that he was working. Later that day, she learned that, in spite of the assurances she had received from Ms. Barnwell, Dawsey had returned to the SIU office on the afternoon of Friday, March 5, 2010.

22. Upon information and belief, Dawsey worked on March 8th through 10th, 2010. On, or about, March 10, 2010, Plaintiff wrote a letter to Ms. Barnwell expressing her concerns that Dawsey had returned to work after only two days and that due to her fear of him, Plaintiff would be forced to resign if further action wasn't taken by SCDC. Upon information and belief, Ms. Barnwell replied by stating "I think things will get better when they hire a Branch Chief [for SIU]."

6

23. On, or about, March 16, 2010, Plaintiff met with Ms. Barnwell to discuss the situation with Dawsey. In spite of Plaintiff's plea for assistance, Ms. Barnwell informed her that there was nothing she could do to help her. Based on this response from Defendant, Plaintiff was forced to submit her letter of resignation that same day. A copy of this letter is attached hereto as Exhibit 3.

(Complaint, ¶¶ 8-30).

a. Gender Discrimination Under Title VII

In her Complaint, Cronin asserts "a compound hostile environment and constructive discharge claim" based on gender. (Pl.Mem., p. 8). SCDC argues that the facts alleged by Cronin are insufficient to support these claims. SCDC appears to argue that the facts alleged are insufficient to establish a prima facie case of hostile work environment or constructive discharge under the McDonnel-Douglas[1] framework. However, as discussed above, "'while a Title VII plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss,' *see* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-515 (2002), '[f]actual allegations must be enough to raise a right to relief above the speculative level.' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)." Templeton v. First Tennessee Bank, N.A., 424 F.App'x 85 (4th Cir. 2011).

Cronin's theory of the case is that the "actions of her male co-workers, particularly Investigator Kim Dawsey ("Dawsey"), made the conditions of her employment unendurable, and that after repeatedly reporting this situation to her management and requesting assistance, she was left no reasonable alternative except resignation when her supervisors at SCDC made it clear that they would take no material action to correct the problem." (Pl.Mem., p. 8).

To establish a prima facie case of a hostile work environment based on gender, the Plaintiff must produce evidence that (1) she experienced unwelcomed harassment; (2) the harassment was

---

[1] McDonnell Douglas v. Green, 411 U.S. 792 (1973).

7

based on her gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis imputing liability to the employer. *See* Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761 (4th Cir. 2003). Because SCDC has filed a motion to dismiss pursuant to Rule 12(b)(6), allegations in the Complaint and inferences therefrom which meet these elements, although not mandatory, would allow Cronin to avoid dismissal. King v. United Way of Central Carolinas, Inc., No. 3:09cv164, 2010 WL 1958128, *5 (May 14, 2010).

The undersigned concludes that Cronin has sufficiently pled her claim of harassment based on gender. Cronin alleges that she received threatening emails from a male when she complained about men using the ladies' restroom, as well as Dawsey's continuous course of abusive conduct toward her. The Complaint alleges that the harassment was so severe that she had to leave work on occasion and was ultimately forced to resign. Further, the abusive actions of Cronin's co-workers may be imputed to SCDC because she complained of them to their supervisors who refused to protect her. Cronin alleges she was told by supervisors that Dawsey would be required to have a psychiatric evaluation which ultimately he did not receive. (Complaint, ¶¶ 24-29). *See* Henderson v. White's Truck Stop, Inc., No. 6:08-CV-00042, 2011 WL 1627120, *5 (W.D.Va. Apr. 29, 2011) quoting Whitten v. Fred's Inc., 601 F.3d 231, 243 (4th Cir. 2010) ("If plaintiff was harassed by a co-worker rather than a supervisor..., the employer is not vicariously liable and can be held accountable only if the plaintiff proves that the employer itself was negligent in *failing to take effective action to stop harassment about which it knew or should have known*.").

b. Constructive Discharge Under Title VII

Cronin alleges that she was constructively discharged because she could no longer endure Dawsey's abuse and SCDC would not act to shield her from it. (Complaint, ¶ 30). There are two elements required to establish a claim of constructive discharge "(1) deliberateness of the employer's actions and (2) intolerability of working conditions." Whitten, 601 F.3d at 248. The employer's intent may be inferred if the employer fails to act in the face of known intolerable conditions. *Id.* Both the intolerability of the working conditions and the SCDC's failure to respond to Cronin's requests for relief from Dawsey's actions alleged in the Complaint are discussed above. The undersigned concludes that Cronin's allegations are sufficient.

c. Retaliation Under Title VII

Cronin also alleges that SCDC retaliated against her for complaining about Dawsey's conduct. In order to establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) the employer took some adverse action against her; and (3) a causal connection existed between the protected activity and the adverse action. Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir. 2002).

The undersigned concludes that Cronin has adequately pled her retaliation claim. As early as 2009, Cronin alleges that she complained to the Employee Relations Branch concerning Dawsey's behavior. She further alleges that after she complained, Dawsey's harassment intensified and that her complaints to management went unheeded resulting in her constructive discharge. Retaliatory constructive discharge may qualify as an adverse employment action. Munday v. Waste Management of North America, Inc., 126 F.3d 239, 243 (4th Cir. 1997). The close proximity to

Cronin's last complaints about Dawsey and SCDC's decision to take no action which resulted in Cronin's resignation may infer a causal connection.

        d.  Equal Protection Under § 1983

Cronin also alleges that SCDC "by and through its...conduct, and acting under color of [state] law, has denied [her] equal protection under law." (Complaint, ¶ 59).  SCDC concedes, citing that sexual harassment by an employee of a state agency may be maintained as a violation of the Fourteenth Amendment under § 1983.  Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994). SCDC argues that since Cronin's Title VII sexual harassment allegations are insufficient, the same is true with respect to her claims under § 1983. Having rejected SCDC's Title VII arguments, its arguments with respect to § 1983 are similarly rejected.

        e.  Wrongful Discharge/Breach of Contract Under South Carolina Law

Cronin alleges that SCDC policy in mandatory terms guarantees employees that they will work "in an environment free from threatening and violent behavior by other employees." Cronin specifically quotes provisions of SCDC Policy ADM-11.37 as the basis of her contractual claim. (Complaint, ¶¶ 34 and 35).  SCDC appears to offer two arguments as to why Cronin's breach of contract claim based on SCDC policy should be dismissed.  First, SCDC argues that Cronin does not specifically allege that SCDC policies altered Cronin's status as an at-will employee.  However, Cronin's allegations that the mandatory nature of SCDC's policy established a contract which SCDC breached necessarily infers and implies that Cronin's at-will status was altered.  Second, SCDC goes beyond the limits of Rule 12(b)(6) and the allegations of the Complaint and argues that the policy which Cronin quotes also contains a conspicuous disclaimer which, under South Carolina law, may be found to support an argument that Cronin remained an at-will employee.  Here, Cronin has

specifically alleged policy provisions that may be found to bind SCDC after discovery and further briefing. Stated differently, Cronin has made specific allegations as to the basis of the alleged contract, and not merely stated in general terms its existence. *See* Perrine v. G4S Secure Solutions (USA), Inc., No. 2:11-1210-RMG, 2011 WL 3563110 (D.S.C. Aug. 9, 2010) (handbook contract claim dismissed pursuant to Rule 12 because claim only stated in general and conclusory terms).

    f. Negligent Supervision Under South Carolina Law

Cronin alleges that she was harmed because SCDC failed to properly supervise Dawsey. "[A]n employer may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is upon the premises of the employer...; (2) the employer knows or has reason to know that he has the ability to control his employee; and (3) the employer knows or should know of the necessity and opportunity for exercising such control." Charleston, S.C. Registry for Golf and Tourism, Inc. v. Young Clement Rivers & Tisdale, LLC, 359 S.C. 635, 645, 598 S.E.2d 717 (Ct.App. 2004), citing Degenhart v. Knights of Columbus, 309 S.C. 114, 116, 420 S.E.2d 495 (1992).

Cronin specifically alleges these elements in her Complaint. Dawsey's alleged conduct occurred at the Special Investigations Unit of SCDC. SCDC's policies quoted in the Complaint provided SCDC with the ability and duty to control Dawsey. Last, Cronin's complaints about Dawsey provided notification to SCDC of the necessity to control him. The undersigned concludes that Cronin has adequately pled a claim of negligent supervision.

## Conclusion

After reviewing the record, the undersigned recommends that Defendant's motion to dismiss be **denied** based on the above discussion.

                              Joseph R. McCrorey
                              United States Magistrate Judge

Columbia, South Carolina

November 4, 2011