IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Donna L. Cronin, ) | C/A No.: 3:11-471-MBS-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| South Carolina Department of ) | |
| Corrections, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Donna L. Cronin filed this action against her former employer, the South Carolina Department of Corrections ("SCDC" or "Defendant") on January 31, 2011, in the Richland County Court of Common Pleas. Defendant removed the action to this court on February 28, 2011. [Entry #1]. Plaintiff asserts the following causes of action: (1) sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); (2) retaliation pursuant to Title VII; (3) violation of 42 U.S.C. § 1983; (4) breach of contract; and (5) negligent supervision. This matter comes before the court on Defendant's motion for summary judgment. [Entry #37]. Plaintiff filed a timely response to the motion. [Entry #41]. The motion for summary judgment having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that

follow, the undersigned recommends Defendant's motion for summary judgment be granted as to Plaintiff's federal claims and that the remaining state law claims be remanded to state court.

I.      Factual Background

Plaintiff was employed as an administrative assistant for the SCDC's Special Investigations Unit ("SIU") beginning in February 2006. [Entry #37-2 at 2]. The SIU was located in a trailer adjacent to SCDC's headquarters on Broad River Road in Columbia. *Id*. The SIU's function is to investigate alleged criminal activity taking place within SCDC's prisons, especially matters involving narcotics, fugitives, and gangs. [Entry #41 at 2]. After 2006, Plaintiff's five coworkers in the SIU were all male. [Entry #37-2 at 4].

Plaintiff alleges that she began being harassed during 2008, when SIU investigators Kim Dawsey and Rocky Barrett began using the ladies' restroom. According to Plaintiff, Dawsey and Barrett would leave the restroom a mess and she reported the matter to headquarters. *Id*. at 10–12.  Debbie Barnwell, SCDC Division Director, sent an email to the male SIU employees directing that they not use the ladies' restroom and indicating that a new key would be issued to and kept by Plaintiff. [Entry #37-3]. Barrett replied to the e-mail suggesting that a unisex bathroom be created, noting that he found it "troubling" that a lock was necessary, and stating that "[b]eing the only male [in my household], I like Dawsey, have learned to sit when using the restroom." *Id*. Plaintiff testified that Dawsey and Barrett thought her complaints of using the restroom were a "big joke," and she found Barrett's email degrading. [Entry #41-1 at 16]. Plaintiff testified that Dawson and Barrett stopped communicating with her about their work

schedules and information she needed to complete investigative reports and vehicle mileage logs. *Id*. at 18–19. Plaintiff alleges that she complained to the SIU chief Elbert Pearson about Dawson and Barrett's failure to follow procedure, but that nothing changed. *Id*.

Plaintiff also testified there were several instances when she overheard Barrett and Dawsey talking "terribly" about their wives in their offices. [Entry #37-2 at 15].  She also testified that the two would make profane, degrading comments about female officers that they were "going to bust" for illegal actions. *Id*. at 14–15.  These comments were not directed to Plaintiff. *Id*. Plaintiff testified that she orally complained to Pearson on multiple occasions, but that she never made complainted in writing and never confronted either individual about her alleged complaints over language. *Id*. at 15–16.

Plaintiff alleges that Dawsey would regularly go into Plaintiff's office when she was not there and make notes on her work calendar and leave her desk drawers open.  *Id*. at 18.  Plaintiff testified that when she eventually confronted Dawsey about this in March 2008, he "flew off the handle" and called her a "bitch" in front of her SIU coworkers and yelled at her very closely to her face. [Entry #41-1 at 21–23; #37-7]. Plaintiff states that was so upset that Chief Pearson took her to see Director Barnwell, who directed Plaintiff to go home for the day and indicated that she would talk to Dawsey about the incident. [Entry #41-1 at 23]. According to Plaintiff, Dawsey continued to go into Plaintiff's office and leave it unsecured.  [Entry #41-3]. On May 22, 2009, Plaintiff emailed Chief Pearson to complain about this practice, and she copied Dawsey on the email. *Id*. In response, Dawsey sent an email disputing that he left her door unsecured, indicating that he

planned to file a hostile work environment complaint, and requesting an investigation into Plaintiff's allegedly false allegations. [Entry #41-4]. Dawsey's email also referred to Plaintiff as having "a lot of personal problems" and narcissistic. *Id*.

On May 28, 2009, Plaintiff filed a sexual harassment/hostile work environment complaint in the SCDC. [Entry #41-5]. Corrie Unthank of SCDC Employee Relations responded to Plaintiff's complaint by letter dated June 22, 2009, stating that SCDC did not believe that Dawsey's actions constituted sexual harassment, but that the agency would monitor the situation. [Entry #41-6].

The next incident Plaintiff complains of occurred in February 2010. During the early morning hours of February 19, 2010, Dawsey kicked in the door to his own office, purportedly because he had locked his keys inside. [Entry #41-7]. When Plaintiff arrived at work that morning, she noticed that Dawsey's door was broken and that someone had installed a hasp lock to secure the office. [Entry #41-1 at 30]. Plaintiff did not know why the door was broken and did not report the problem to anyone, but someone else in the SIU office reported the damage and SCDC sent a locksmith to fix the door. *Id*. at 31. That same morning, Director Barnwell sent an email to Dawsey instructing him to remove the hasp lock from his office door. [Entry #41-7]. Dawsey replied to the email and expressed irritation and anger that the issue was reported to Director Barnwell:

> The back stabbing incompetent petty person that works within this division that reported this to you (I suppose it's one your as you before [sic] "little birds"[)] will have their day and I only hope I'll be there to see them fall on their face. . . . I have been in this business a long time and whoever this person is better have their ducks in a row cause this can be a two way street. This is not to be construed as a threat but I will follow the rules legally per SCDC policy in my pursuit to identify and take what ever action

necessary to face my accuser.

*Id*. Additionally, Dawsey indicated in the email that he was working at night according to an agreement to have limited contact with Plaintiff.[1] Although Plaintiff was not copied on the original email, she received a copy of it and testified that she was scared based on her perception that Dawsey was a "loose cannon." [Entry #41-1 at 34, 39].

As Director Barnwell was out of the office, Plaintiff related her fears to Unthank, who took Plaintiff to talk to SCDC Human Resources Manager Roger Petersen. *Id*. at 35, 39. Manager Petersen told Plaintiff to go home for the remainder of the day. *Id*. at 39–40. Plaintiff alleges that when she went to gather her personal belongings before leaving, she saw Dawsey with a gun in the back of his pants without a holster. *Id*. at 35–36.

Plaintiff alleges she went to work the next day (Tuesday, February 23) and sat at her desk "literally shaking" and was too scared to even use the restroom until Dawsey left the SIU office. *Id*. at 40–41. On Wednesday, February 24, Plaintiff stayed at home waiting for someone at SCDC to get in touch with her about the situation. *Id*. at 41. She eventually called Unthank who told her that SCDC was going to ask Dawsey to take a leave of absence and submit to a medical evaluation before returning to work. *Id*. at 41–42. Plaintiff requested that she be "in the loop" and kept informed of what was going on with Dawsey. *Id*. at 39. Plaintiff returned to work on Thursday, February 25 and does not recall seeing Dawsey that day. *Id*. at 42.

On Tuesday, March 2, 2010, around 10:00 a.m., Unthank called Plaintiff and told

---

[1] Neither Plaintiff nor Defendant have provided any facts to clarify to what agreement Dawsey was referring to in the email.

her that SCDC managers were preparing to meet with Dawsey to place him on medical leave, and allowed Plaintiff to leave for the remainder of the day. *Id*. at 45. Daniel Murphy, SCDC Inspector General, informed Dawsey in a letter that he was being placed on medical leave for at least a week. [Entry #41-11]. Dawsey was required to get documentation from a medical professional indicating that he is competent and emotionally able to return to full duty as an investigator. *Id*. More specifically, the letter stated, "I have received reports of your behavior that give[] me cause for concern. You continually question authority, send lengthy inappropriate emails to staff laced with anger and paranoia that include[] veiled threats. In addition, you recently destroyed your office door when breaking into [sic] in order to retrieve your keys." *Id*.

On Monday, March 8, 2010, Plaintiff alleges she arrived at work and noticed that Dawsey's SCDC car was absent, which she took to mean that he had returned to work. [Entry #41-1 at 46]. She stated that upon entering the SIU office, she discovered that Dawsey had come into her office and written on her desk calendar. *Id*. She claims she then learned that he had been allowed to return to work the previous Friday—three days after his leave of absence had been ordered. *Id*. Plaintiff testified that she was anxious and could not eat or sleep because she was stressed. [Entry #41-1 at 51]. Her doctor prescribed her Xanax. *Id*.

On March 16, 2010, Plaintiff submitted her resignation letter to Defendant, indicating that she had "tried to seek help after two separate incidents and to no avail, the matter of Investigator Dawsey has made it impossible for me to come to work, do my job and feel safe." [Entry #41-9].

II.     Discussion

    A.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

    B.     Analysis

        1.     Discrimination/Constructive Discharge

Plaintiff claims that Defendant discriminated against her based on her gender in violation of Title VII. To establish a prima facie case of gender discrimination under Title VII, a plaintiff must prove: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). Here, both parties concede that Plaintiff, being female, is a member of a protected class, and that she was performing her job satisfactorily. Although Plaintiff resigned from her job, she alleges an adverse employment action based on constructive discharge.

a. Adverse Employment Action/Constructive Discharge

To demonstrate constructive discharge, a plaintiff must allege "(1) deliberateness of the employer's actions and (2) intolerability of the working conditions." *Whitten v. Fred's Inc.*, 601 F.3d 231, 248 (4th Cir. 2010) (internal quotation marks and citations omitted). To plead the deliberateness element properly, a plaintiff must allege that "the actions complained of were intended by the employer as an effort to force [her] to quit." *Id.* As the Fourth Circuit explained, "an employee is constructively discharged 'if an employer makes the working conditions of the employee intolerable in an effort to induce the employee to quit.'" *Whitten*, 601 F.3d at 248 (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353–54 (4th Cir. 1995)). The Fourth Circuit requires "proof of the employer's specific intent to force an employee to leave." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). "Intent can be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." *Id.* Intent may also be shown by evidence that the employee's resignation was the reasonably foreseeable consequence of the employer's conduct. *Martin*, 48 F.3d at 1355. "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his coworkers." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). In determining whether working conditions are "intolerable," the standard used is an objective one of "whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255.

First, Plaintiff has not shown that Defendant acted with deliberateness in an effort

to force her to quit. When Plaintiff complained about Dawsey and Barrett using the ladies' restroom, Defendant instructed them not to use it anymore and had a lock installed to ensure that they were no longer able to use the restroom. [Entry #41-5 at 3]. Additionally, after Plaintiff and Dawsey's confrontation on March 27, 2008, when he called her a "bitch," she was allowed to go home for the remainder of the day and remain at home the following day. *Id.* Further, in Plaintiff's SCDC grievance, she admitted that Director Barnwell spoke to Dawsey about the incident "and everything calmed down for the most part." *Id.* at 4. In May 2009, Plaintiff complained again via an email that she copied Dawsey on about his practice of entering her office leaving notes on her calendar and leaving it unsecured. Plaintiff then filed an internal SCDC grievance that Defendant responded to in June 2009. [Entry #41-6]. Plaintiff has not shown how these incidents demonstrate that Defendant acted with deliberateness in an effort to force her to quit. Rather, they demonstrate that Defendant was responsive to Plaintiff's complaints and sought ways to ameliorate the situation caused by her coworker.

With regard to the 2010 incident in which Dawsey kicked in his office door, wrote a threatening email, and carried a handgun in his pants, Plaintiff was allowed to leave early from work or to stay home when she expressed to Defendant her discomfort with Dawsey's presence. Defendant also required Dawsey to obtain clearance from a medical doctor that he was mentally competent to perform his duties. Although Dawsey's email mentioned Plaintiff tangentially, there is no evidence that the email was directed at Plaintiff. Plaintiff has not produced evidence that Defendant failed to act in a deliberate manner to induce her to resign. On the contrary, any time Plaintiff complained about

Dawsey's behavior, Defendant took action to ease Plaintiff's concerns.

Plaintiff has also failed to show that the working conditions were objectively intolerable such that she was forced to resign. When Plaintiff complained that Dawsey and Barrett were using the ladies' restroom, Defendant had a new lock installed and gave the key to Plaintiff alone. In addition, although Dawsey called Plaintiff "a bitch" in 2008 and came into her office to write messages on her calendar, such actions do not constitute an objectively intolerable workplace. This is underscored by the fact that Plaintiff did not resign until March 2010 despite these incidents, which she alleges took place in 2008 and May 2009.

To the extent Plaintiff argues the workplace became intolerable when Dawsey kicked in his office door, sent a threatening email about the incident, and carried a handgun in the back of his pants that day, her arguments are undercut by the fact that no other employee found these work conditions so intolerable that they felt forced to resign. There is no indication in the record that Dawsey's actions were directed towards Plaintiff, and therefore these conditions equally affected her coworkers. As noted in *Bristow*,

> [T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

*Id*. As Plaintiff has not proved that she faced conditions in excess of her coworkers that forced her to resign from her job, she has not shown that she was constructively discharged. Without a showing of constructive discharge, Plaintiff is unable to show that

she suffered an adverse employment action.

                b.  Adverse Employment Action was Because of Sex

Even if Plaintiff were able to meet her burden of showing constructive discharge, she still must prove that the "complained of conduct was motivated by discriminatory animus toward women." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 238 (4th Cir. 1999) (citations omitted). Plaintiff has not set forth any evidence that Dawsey's conduct after May 2009 was related to her gender. Additionally, as discussed *supra*, there is no evidence that Plaintiff's alleged constructive discharge was based on conduct occurring in May 2009 or before, as she continued to work for Defendant for an additional eight months, and therefore must not have found the conditions so intolerable as to cause her to resign.

Plaintiff's argument hinges on the fact that she was the only woman working in the SIU. In determining whether a plaintiff was targeted because of her sex, "the critical issue" is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not. *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir. 2001). "[A]n employee is harassed . . . because of his or her sex if, 'but-for' the employee's sex, he or she would not have been the victim of the discrimination . . . . An insulting or demeaning remark does not create a federal cause of action for sexual harassment merely because the 'victim' of the remark happens to belong to a class protected by Title VII." *Hartsell v. Duplex Productions*, 123 F.3d 766, 772 (4th Cir. 1997) (internal quotation omitted).

Here, although Dawsey and Plaintiff do not appear to have worked well together,

there is no evidence that this was because of Plaintiff's gender. In fact, Plaintiff has not shown that Dawsey's erratic behavior was limited to or directed to her. For instance, Plaintiff points out that Dawsey's assault on his office door "did not involve the first instance of Dawsey displaying erratic, violent behavior. Plaintiff knew that Dawsey had ripped a whiteboard that hung in the hallway of the SIU trailer off the wall in front of Investigator Larry Estes." [Entry #41 at 11]. In fact, the emails attached as evidence by Plaintiff display Dawsey's propensity to insult male and female employees, supervisors and coworkers alike. *See e.g.*, Entry #41-5 at 10. Therefore, although Plaintiff may have feared Dawsey's erratic and violent behavior, perhaps even justifiably so, she has failed to show that such behavior was directed at Plaintiff alone or that it was because she was a woman. Instead, at most Plaintiff has only shown that Dawsey was erratic and violent, and that he is male and she is female.

Because Plaintiff has failed to show that she suffered an adverse employment action by constructive discharge, or that the post-May 2009 conduct complained of was based on her gender, Plaintiff has not set forth a Title VII claim for gender discrimination.

### 2. Retaliation

To demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *See Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997).

Plaintiff's response brief contains no discussion of her retaliation claim. *See* Entry #41. The undersigned assumes without deciding that Plaintiff claims her protected activity was her filing of an internal SCDC grievance in May 2009. As discussed, *supra*, Plaintiff has failed to show that she suffered an adverse employment action through constructive discharge. Even if Plaintiff could prove an adverse employment action, she has failed to show a causal connection between her protected activity and the alleged adverse employment action. The causal connection element may be satisfied merely by close temporal proximity between the protected activity and the adverse employment action. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Fourth Circuit has found that a period of three to four months between the protected activity and the termination was too long to establish a causal connection by temporal proximity alone. *See Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (unpublished). The Fourth Circuit has also found that, "[i]n cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal quotation omitted). However, in the instant case Plaintiff has not pointed to any evidence of retaliatory animus in the period between Plaintiff's May 2009 filing of a grievance and her March 2010 resignation. Therefore, it is recommended that Defendant be granted summary judgment on Plaintiff's retaliation claim.

      3. Plaintiff's § 1983 claim

Plaintiff's § 1983 claim fails for the same reasons as her Title VII claims. The

Fourth Circuit has held that a claim brought pursuant to § 1983 should be analyzed consistent with those principles that govern consideration of Title VII claims. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 n.\* (4th Cir. 2008); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). Based on the same reasoning employed in recommending summary judgment on Plaintiff's Title VII claims, the undersigned recommends Defendant be granted summary judgment on Plaintiff's claim pursuant to § 1983. Furthermore, Plaintiff's § 1983 claim must also fail because it is well-settled that a state agency is not a person within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

          5.  State-Law Claims

If the district judge accepts this recommendation, only Plaintiff's state-law claims for breach of contract and negligent supervision remain. The undersigned recommends the court exercise its discretion to decline to exercise supplemental jurisdiction over Plaintiff's state law claims and remand the case to state court under 28 U.S.C. § 1367(c). *See* § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) (discussing a court's discretion to exercise pendent jurisdiction after removal).

III.  Conclusion and Recommendation

For the foregoing reasons, it is recommended Defendant's motion for summary judgment [Entry #37] be granted as to her claims for: (1) sex discrimination pursuant to Title VII; (2) retaliation pursuant to Title VII; and (3) violation of 42 U.S.C. § 1983. It is further recommended that Plaintiff's claims for breach of contract and negligent supervision be remanded to state court pursuant to 28 U.S.C. § 1367(c).

IT IS SO RECOMMENDED.

*/s/ Shiva V. Hodges*

May 14, 2013  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).